CITY OF BROOKLYN v. NASSAU ELECTRIC R. CO.

(Supreme Court, Appellate Division, Second Department.    March 7, 1899.)

ORDINANCES—STREET-CAR FENDERS.
    A provision, in an ordinance requiring safety fenders to be attached to the front platform of electric street cars, that they shall not be more than three inches from the tracks, is unreasonable, in view of the liability of the height of the car above the tracks to vary according to the loads, the grades, and the curves.
    Bartlett and Woodward, JJ., dissenting.

Appeal from Kings county court.

Action by the city of Brooklyn against the Nassau Electric Railroad Company. From a judgment of the county court affirming a judgment of the justice's court of the city of Brooklyn for plaintiff, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

John F. Brennan, for appellant.
William J. Carr, for respondent.

GOODRICH, P. J. The action is brought to recover a penalty for the defendant's breach of an ordinance of the former city of Brooklyn, which reads in part as follows:

"Sec. 3. Resolved, that each and every railroad company operating cars by electricity on any of the streets, avenues, or public places in the city of Brooklyn shall equip within sixty days after this ordinance shall have been approved by his honor, the mayor, each and every car so operated with a safety fender or safeguard attached to the front platform of said car or cars which shall extend from the platform of said car or cars, to within not more than three inches from the tracks, and to be made and modeled in such a manner that it will be impossible for any person or persons to pass under the fender or the platform of said car or cars and come in contact with the wheels of said car. The said front platform of said car to be construed as the platform occupied by the motorman, no matter in what direction the said car may be going." ·

"Sec. 5. Penalty. Any corporation whose officers, agents, or servants shall willfully or negligently violate any of the provisions of this ordinance shall be liable for a penalty in the sum of $25.00 for each and every offense."

The justice rendered judgment for the plaintiff, the county court affirmed the judgment, and from such affirmance this appeal is taken.

The defendant's chief contentions are: First, that the ordinance, in itself, is unreasonable; second, that the city had not proved a willful or negligent violation of the ordinance.

It is necessary to discuss only a single question,—the validity of the ordinance. It is authoritatively settled that the courts have power to pass upon the reasonableness of an ordinance. The court, in Mayor, etc., of New York City v. Dry Docks, E. B. & B. R. Co., 133 N. Y. 104, 111, 112, 30 N. E. 564, said:

"The adoption of the ordinance in question does not conclude the courts in passing upon the case of its alleged violation, because their determination is to be controlled by the question of whether it was reasonable as to the defendant, and that can only be determined from facts in evidence. The court will imply the existence of reasons rendering the adoption of such a public measure presumptively proper, and it is for the defendant to show

the facts which should exempt it from compliance with the general reg-
ulation, Presumptively, the ordinance was required in the interests of the
public, for whose convenience railroad companies hold and must operate
their franchises; but the presumption is open to rebuttal by this defendant,
by giving in evidence facts which show that in its case its enforcement would
be unreasonable, and that the convenience of the public or of passengers did
not require such a regulation. * * * Undoubtedly the reasonableness of
the ordinance was a question of law, for the court to decide upon a consid-
eration of all the facts and circumstances of the case."

The validity of the ordinance depends on the question whether it is
reasonable. But the reasonableness is a matter of law for the court
to determine, and not one of fact, though it is to be determined in
the light of the facts proved and our common knowledge. While we
appreciate the danger occasioned to pedestrians on the highway from
the use of trolley cars, and see the propriety of any regulations or re-
quirements that the common council may impose upon the operation
and management of such cars for the safety of the public, this is al-
ways subject to the qualification that such requirements must be rea-
sonable; that is to say, practicable,—not from the point of view of ex-
pense to the companies operating the cars, but practicable in the sense
that they may not improperly interfere with the discharge of the pub-
lic duty of such companies in transporting passengers. It is matter of
common knowledge that a trolley car has springs, and a platform,
forming a solid part of the car body; that the weight of passengers
will depress, more or less, the body of the car, including the platform;
that a car in motion will oscillate longitudinally and laterally; that
the surface of a city street is not perfectly flat or even over its entire
breadth; that there are grades of different degrees, and curves of vary-
ing radii, in the city streets; and that the streets themselves have
different degrees of convexity. If the car, in its operation, never
changed its height from the ground, and did not oscillate, and if the
surface of the street were flat, and there were no grades or curves, and
no obstructions were found in the surface, there would be no diffi-
culty in saying that the ordinance was reasonable; but, when all
these facts exist, it is evident that no fender can be attached im-
movably to the front platform, so that it will at all times remain at
the required height above the track and all parts thereof,—for, as
there is equal danger to a person standing on any part of the street
directly in front of an approaching car, we assume that "tracks"
means the rails and the entire space between them. This would re-
quire a fender of a very curious shape, and not only that, but one
which would conform to the varying convexity of surface in different
streets and portions of streets. Such a fender is impracticable. Of
course, we do not lose sight of the fact that, as the ordinance says
"not more than three inches from the tracks," one part of the fender
could be three inches above the tracks, and other parts less than
three inches; but there may be, and often is, a variance of more
than three inches in height between the rails and the center of the
track. On the testimony in this case, and in the light of our common
knowledge and experience, we can say that the ordinance directing
that proper fenders shall be put on all cars is plainly both reasonable
and practicable, but the requirement that such fenders shall be within

three inches of the tracks seems to us entirely impracticable and unreasonable. While fenders have been uniformly adopted on all the cars of the city, no one of them seems to comply with this requirement, and the reasons for it, in the present state of affairs, appear obvious. The height of the car itself above the tracks at all times is liable to vary according to the load in the car. The movement of the car on grades or curves also causes the distance of the front platform from the surface of the street or tracks to change from time to time. These oscillations or differences of elevation often exceed three inches. While it not only may be possible, but is entirely probable, that in the future mechanical ingenuity will provide devices which will enable these fenders to be maintained at a somewhat uniform height above the street, automatically or otherwise, it appears here clearly that no such device has been invented, or, if invented, its merits have not become so known as to require its adoption. We are constrained to say that at the present time, and in the present state of the manufacture of fenders, the direction of this ordinance that fenders shall be maintained three inches above the tracks is unreasonable and void; but in other respects the ordinance is valid, and it is the duty of the railroad companies to comply with the provisions, and maintain their fenders at the least elevation practicable.

With these views, we do not deem it essential to discuss any other questions.

The judgments of the county court and of the justice of the peace must be reversed, with costs. All concur, except BARTLETT and WOODWARD, JJ., dissenting.